```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


RAYMOND A. LONG, M.D.              :
                                   :
        Plaintiff,                 :
                                   :    Case No. 2:12-cv-81
     v.                            :
                                   :
LLOYD GEORGE PARRY and             :
DAVIS, PARRY & TYLER, P.C.,        :
                                   :
        Defendants.                :
```

## Opinion and Order

Defendants move to dismiss this case with prejudice pursuant to Federal Rule of Civil Procedure 41(b) due to the Plaintiff's failure to prosecute.  ECF No. 41.  For the reasons explained below, Defendants' motion is **denied**.

### I.   Relevant Background

Plaintiff Raymond A. Long, M.D. filed the present suit against an attorney and law firm that represented him in a prior lawsuit arising out of Dr. Long's resignation from the medical staff at Northwestern Medical Center in St. Albans, Vermont.  Dr. Long resigned in 2004, filed suit in 2005, and litigated his claims for nearly three years.  The parties to the first suit settled with the assistance of a mediator.  Dr. Long's Complaint in this case, filed on April 24, 2012, alleges misconduct in connection with events related to his 2005 suit, the related

mediation, and more recent efforts to resolve a fee dispute between Dr. Long and the Defendants. ECF No. 1.

The parties to this suit began discussing Plaintiff's underlying claims and exchanging documents as early as April 2011. ECF Nos. 48-2, 48-3. On February 7, 2012, the parties signed a tolling agreement in order to engage in settlement discussions. ECF No. 48-4. In April of 2012, counsel for Defendants inspected the Plaintiff's records. ECF No. 48-5. Mediation was scheduled for April 17, 2012 but was cancelled because, according to the Plaintiff, the Defendants did not produce certain documents. ECF No. 48-6. Shortly thereafter Dr. Long filed his Complaint.

The Defendants moved to dismiss this case on June 25, 2012, ECF No. 6, and then filed a second motion to dismiss on August 24, 2012, ECF No. 11. The Plaintiff opposed both motions and separately moved to amend his complaint twice, first on October 30, 2012, ECF No. 18, and again on November 30, 2012, ECF No. 21. On February 1, 2013 the Court denied Defendants' motions to dismiss, granted Plaintiff's motion to amend, and noted that venue in this action may be appropriate in the Eastern District of Pennsylvania. ECF No. 26. The Court stated that if no objections to a convenience transfer pursuant to 28 U.S.C. § 1404(a) were filed within thirty days, the Court on its own

motion would transfer this action to the Eastern District of Pennsylvania.

Within thirty days of the Court's ruling Plaintiff filed an objection to the transfer on February 20, 2013.  ECF No. 27.  On April 21, 2014 counsel for the Plaintiff sent a letter to the Clerk of the District of Vermont, with a copy to counsel for the Defendants, noting that the Court's "sua sponte motion for transfer" had been ripe for decision since February 2013 and requested the Clerk "see why no decision has issued[.]"  ECF No. 48-7.  The Court ordered the Defendants to respond to the Plaintiff's objection within fifteen days of April 30, 2014.  ECF No. 30.  On May 5, 2014, the Defendants filed their response, in which they advised the Court that they did not oppose the Plaintiff's objection to transfer.

Apart from motions for appearance *pro hac vice* and a motion to substitute attorneys, there were no other documents filed on the docket until the Court noticed a pretrial conference on November 11, 2014.  The Plaintiff then filed his Amended Complaint on November 20, 2014, ECF No. 39, and moved to cancel the pretrial conference on November 25, 2014, ECF No. 40.  The Defendants filed the motion to dismiss now before the Court on November 26, 2014.  The Court held a pretrial conference on December 4, 2014 and noted it would issue an opinion addressing

Defendants' motion after Plaintiff had an opportunity to respond.

## II. Legal Standard

In addition to the powers codified in the Federal Rules of Civil Procedure and elsewhere, every district court has the "inherent power" to supervise and control its own proceedings, including dismissing an action for failure to prosecute. *Mitchell v. Lyons Prof'l Services, Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (internal quotation and citation omitted). Dismissing a case for failure to prosecute, however, is a "harsh remedy" that should "be utilized only in extreme situations." *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (internal quotation and citation omitted).

In recognition of the harsh nature of dismissal, the Second Circuit has fashioned guiding rules that limit a trial court's discretion when determining whether dismissal for failure to prosecute is appropriate. *Id.* District courts considering dismissal under Federal Rule of Civil Procedure 41(b) must weigh five factors prescribed by Second Circuit case law:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Baptiste v. Sommers*, 768 F.3d 212, 214, 216 (2d Cir. 2014) (internal quotation and citation omitted).  No one factor is dispositive.  *Lewis*, 564 F.3d at 576.

**III. Analysis**

    **A. Duration**

Defendants argue that the clock for the Plaintiff's delay should begin when the Court granted the Plaintiff's Motion to Amend in February 2013, thereby obligating the Plaintiff to file and serve the Amended Complaint and start the case moving along.  Counsel's April 2014 letter to the Clerk's Office makes it clear that counsel believed that the Court needed to take some action to resolve its *sua sponte* motion.  Defendants, meanwhile, interpreted the Court's February opinion to mean that as long as the Plaintiff objected within thirty days - which he did - that no further action was needed by anyone to prevent the transfer.

The Court's February opinion did not specify what procedure would be required in the event that either party had an objection, nor did it specify whether the Defendants were required to respond to any objection the Plaintiff might raise or vice versa.  Moreover, the Court did not make clear whether it might consider transferring the case even if a party objected or if simply raising an objection was sufficient to terminate the Court's motion.  While it is true that counsel for the

5

Plaintiff waited over a year before sending a letter inquiring into the status of the case, it was reasonable to believe that the case could not proceed until the question of transfer was affirmatively resolved in some way.  Perhaps in the Defendants' view the Plaintiff should have made his inquiry earlier, but there is no evidence that the Plaintiff waited as a matter of strategy or as an intentional dilatory tactic.  It is reasonable to conclude that the Plaintiff was simply uncertain and the text of the Court's order did not resolve his uncertainty.

　　There was no significant activity in this case between Defendants' response to the Plaintiff's objection to transfer and Plaintiff's filing of his Amended Complaint, a period of slightly less than six months.  Under different circumstances courts have found delays of similar lengths unjustifiable.  *See, e.g.*, *McGee v. Pallito*, No. 1:10-cv-11-jgm-jmc, 2013 WL 5372328, at *9 (D. Vt. Sept. 24, 2013) (collecting cases).  However, here the delay was understandable.  The Plaintiff has not failed to respond to any direct order or deadline imposed by the Court, nor has he failed to appear at any scheduled hearings.  Rather, here the Court ordered the Defendants to respond to the Plaintiff's objection and then took no further action.  The Court did not believe any further action on its part was required since the parties were in agreement in opposing the proposed transfer.  However, the wisdom of hindsight now

suggests that some explicit communication from the Court might have benefitted everyone by clarifying that it would retain jurisdiction and the case should proceed, thus prompting the Plaintiff to file his Amended Complaint more swiftly.  Because the delay was understandable under the circumstances this factor does not weigh heavily against the Plaintiff.

**B. Notice**

Defendants concede that the Plaintiff has not received formal notice that further delay would result in dismissal.  ECF No. 41 at 7.  Even if notice is not an absolute requirement for dismissal in some contexts, the Court nevertheless considers this factor to be significant given the extremely harsh nature of the requested remedy.  Dismissing this case without giving the Plaintiff notice and an opportunity to be heard would offend due process.  See *Mickle v. Morin*, 297 F.3d 114, 126 (2d Cir. 2002) ("Before imposing sanctions, the court must afford the person it proposes to sanction due process, *i.e.,* notice and opportunity to be heard. (internal quotation and citation omitted)).  The Defendants argue that their motion provided the Plaintiff with an adequate opportunity to respond and request a hearing, but responding to Defendants' motion is not a sufficient substitute for prior notice from the Court that failure to move the case along would result in dismissal.  The

fact that the Plaintiff has able counsel does not change the Court's conclusion.

The Court is also mindful that clients may be blameless for these kinds of delays and so dismissal with prejudice must be reserved for "extreme situations." *Mitchell*, 708 F.3d at 467 (internal quotation and citation omitted).  This is not such an extreme situation.  The fact that the Plaintiff was not given any notice is a strong factor in his favor, especially in light of the fact that he and his counsel were likely confused and did not appear to be willfully delaying the proceedings.

### C. Prejudice

Defendants argue that the delay in this case presumptively establishes prejudice.  As described above, however, the Court disagrees with the Defendants about how to measure the delay given the Plaintiff's reasonable confusion under the circumstances.  While "'[p]rejudice to defendants resulting from *unreasonable* delay may be presumed," here the delay was reasonable.  *Shannon v. General Elec. Co.*, 186 F.3d 186, 195 (2d. Cir. 1999) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) (emphasis added).  In cases where delay is more moderate or excusable the need to show actual prejudice is greater.  *Id.*

Other than the presumption, however, Defendants do not describe any significant concrete examples of how the delay has

prejudiced them other than a general averment that "memories have surely faded, witnesses have dispersed and documentary evidence may have been lost."[1]  ECF No. 41 at 5.  This alleged prejudice is speculative.  In their Reply, the Defendants state that at least one key witness has died but do not explain how his unavailability prejudices them.  Nor does the fact that the underlying lawsuit is complex, standing alone, demonstrate prejudice.

Similar to the defendants in *Baptiste*, the Defendants here "have not pointed to any concrete way that they have suffered or will suffer prejudice" due to the delay because they "do not identify specific pieces of evidence that they have reason to believe have disappeared, nor do they specify which of their defenses might be compromised."  768 F.3d at 218.  Therefore this factor does not outweigh the others in the Plaintiff's favor.

---

[1] The Defendants include one example in a footnote suggesting that the Plaintiff's allegations relate to Defendant Parry's conduct at the mediation in 2008 and that establishing the truth of what occurred will require witnesses to recall specific verbal exchanges that occurred almost seven years ago.  While it may be reasonable to assume memories fade over time, the Defendants are speculating to some extent that witnesses' memories have indeed faded here.  This risk is not significant enough to overcome the other factors in the Plaintiff's favor.

**D. Balancing the Court's Docket with the Plaintiff's Interest in Being Heard**

The Defendants note that this is the third federal lawsuit stemming from the Plaintiff's departure from Northwestern Medical Center that he has pursued.  They argue that the Court has a legitimate interest "in preventing dilatory litigants like the Plaintiff here from abusing scarce judicial resources."  ECF No. 41 at 6.  Here there is no evidence in the record that the Plaintiff has engaged in any intentionally dilatory tactics or has been acting in bad faith.  Like the plaintiff in *Baptiste*, the Plaintiff's "failure to prosecute in this case was silent and unobtrusive rather than vexatious and burdensome: . . . he did not swamp the court with irrelevant or obstructionist filings."  768 F.3d at 218 (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001)).  On the one hand, the Plaintiff's silent delay did not significantly congest the Court's docket.  On the other hand, the Plaintiff has not yet had a fair chance to have his malpractice and related claims heard.  Therefore this factor weighs in the Plaintiff's favor.

**E. Less Drastic Sanctions**

The Court has a "wide panoply" of sanctions at its disposal, including monetary sanctions and the Court's disciplinary and contempt powers.  *Mitchell*, 708 F.3d at 469.  However, the Court does not need to address whether less drastic

sanctions are appropriate because none of the other factors weigh in Defendants' favor enough for the Court to consider imposing any sanction at all.

## Conclusion

For the reasons described above the Court concludes that the present case does not present the extreme situation in which dismissal with prejudice, or indeed any lesser sanction is appropriate.  Defendants' Motion to Dismiss is accordingly **denied.**

Dated at Burlington, in the District of Vermont, this 28th day of January, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
